FIRSTLAND INTERNATIONAL, INC. and Shao Zeng Chai, Plaintiffs–Appellants,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant–Appellee.

Docket No. 03–6139.

United States Court of Appeals, Second Circuit.

Argued: Feb. 18, 2004.

Decided: Aug. 2, 2004.

Alan Lee, New York, NY, for Plaintiffs–Appellants.

F. Franklin Amanat, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, Steven J. Kim, Assistant United States Attorney, Dione M. Enea, Special Assistant United States Attorney, of counsel; Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Defendant–Appellee.

Ronald Y. Wada, Berry, Appleman & Leiden LLP, San Francisco, CA, for Amicus Curiae American Immigration Lawyers Association.

Colleen L. Caden (John A. Quinn, of counsel), Fragomen, Del Rey, Bernsen & Loewy, P.C., New York, NY, for Amici Curiae American Council on International Personnel and The Chamber of Commerce of the United States of America.

Before: KEARSE, CABRANES, and KATZMANN, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Plaintiffs Firstland International, Inc. ("Firstland") and Shao Zeng Chai ("Chai") appeal from an order of the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge* ), dismissing plaintiffs' action for lack of subject matter jurisdiction. The question presented on appeal is whether 8 U.S.C. § 1252(a)(2)(B)(ii) ("Section 1252"), which precludes judicial review of certain decisions that are "in the discretion of the Attorney General," thereby precluded the District Court from reviewing the decision of the Attorney General's delegate, defendant Immigration and Naturalization Service ("INS")[1], to revoke its approval of an

---

1. The INS has ceased to exist as an independent agency, certain of its functions having been transferred as of March 1, 2003, to the Department of Homeland Security, *see* Homeland Security Act of 2002, Pub.L. No. 107–296, § 471, 116 Stat. 2135 (Nov. 25, 2002), and the functions at issue here are being performed by what is now called the Bureau of Citizenship and Immigration Services within the Department of Homeland Security, *see* id. § 451(b).

As discussed below, the parties do not dispute that, at the relevant time, the INS was

immigrant visa petition that had been filed by Firstland on behalf of Chai. The INS purported to revoke its approval of Chai's visa petition("Section 1155"). No court of appeals has addressed the argument raised by plaintiffs—that Section 1155, by its terms, does not permit revocation of a previously approved visa petition where the beneficiary is already inside the United States.

Because we hold that Section 1155 *did not authorize* the INS's decision to revoke Chai's visa petition after Chai had entered the United States, we conclude that that decision was not "in the discretion of the Attorney General," and that Section 1252 therefore did not divest the District Court of jurisdiction to hear plaintiffs' claims.

## BACKGROUND

Firstland is a wholly-owned subsidiary of the Shanghai Yangzhang Shiguang Lighter Co., Ltd., a company headquartered in China. Chai, the president of Firstland, came to the United States in March 1997 on an L–1A nonimmigrant visa as an intracompany managerial or executive transferee, an alien who "seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is manageri-

al, executive, or involves specialized knowledge," 8 U.S.C. § 1101(a)(15)(L).

In August 1999, over two years after Chai had entered the United States on the L–1A *nonimmigrant* visa, Firstland filed with the INS an *immigrant* visa petition, known as an I–140 petition, seeking an employment-based immigrant visa for Chai as a "multinational executive or manager," pursuant to 8 U.S.C. § 1153(b)(1)(C).[2] The INS approved the I–140 petition in March 2000.

The INS's approval of an immigrant visa petition is one step toward obtaining permanent resident status.[3] Accordingly, on the basis of the INS's approval of Chai's immigrant visa petition, in April 2000 Chai filed a petition with the INS, known as an I–485 petition, to adjust his status to that of lawful permanent resident.

In October 2000, while the I–485 petition remained unadjudicated, the INS informed Firstland of its intention to revoke its approval of the I–140 visa petition, explaining that further review revealed that "the evidence of record [did] not clearly demonstrate that [Chai] ha[d] been and [would] be employed in a primarily managerial or executive capacity." In response, Firstland submitted additional documentation to the INS, which, unconvinced, issued a decision on January 22, 2001, revoking its

---

exercising powers delegated by the Attorney General. *See* 8 C.F.R. § 2.1 (2003).

**2.** In general, "nonimmigrants" are aliens with a permanent foreign residence who wish to be in the United States on a temporary basis, while "immigrants" are aliens who seek permanent residence in the United States. *See generally* 8 U.S.C. §§ 1101(a)(15), 1184(a); *Elkins v. Moreno*, 435 U.S. 647, 664–65, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978).

**3.** Even after receiving approval of an immigrant *visa petition*, an alien seeking permanent resident status must also show, among other things, eligibility for an immigrant *visa*.

*See* 8 U.S.C. § 1255(a). That is, the INS's approval of an immigrant visa petition is distinct from the issuance of an immigrant visa. *See, e.g., Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir.1984) ("An approved visa petition is merely a preliminary step in the visa application process. It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States." (citations omitted)); *Joseph v. Landon*, 679 F.2d 113, 115 (7th Cir.1982) ("An initial approval of a visa petition does not alone give the beneficiary of the petition an immediate right to an immigrant visa." (internal quotation marks omitted)).

approval of the petition.[4] Firstland appealed this decision to the INS's Administrative Appeals Office, which denied the appeal on June 21, 2002.

On July 17, 2002, Firstland and Chai then brought an action in the District Court challenging the INS's revocation of the visa petition. In a decision dated May 16, 2003, the District Court dismissed the action, holding that Section 1252 divested the courts of subject matter jurisdiction over the action. This appeal followed.

## DISCUSSION

■ We review the District Court's dismissal for lack of subject matter jurisdiction de novo. See, e.g., Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996).

Section 1252, entitled "Judicial Review of Orders of Removal," strips the federal courts of jurisdiction to review certain discretionary decisions of the Attorney General. It provides in relevant part:

Notwithstanding any other provision of law, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General *the authority for which is specified under this subchapter to be in the discretion of the Attorney General*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

Section 1155, found within the same subchapter of the United States Code as Section 1252, provides that the Attorney General may revoke his approval of a visa petition, but only under certain circumstances. In order for revocation to be effective, the beneficiary of the petition must receive notice of the revocation, before beginning his journey to the United States, from the Secretary of State. Section 1155 provides in full:

The Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition. *In no case, however, shall such revocation have effect unless there is mailed to the petitioner's last known address a notice of the revocation and unless notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary commences his journey to the United States.* If notice of revocation is not so given, and the beneficiary applies for admission to the United States, his admissibility shall be determined in the manner provided for by sections 1225 and 1229a of this title.

8 U.S.C. § 1155 (emphasis added).

Section 1155 refers to the authority of the "Attorney General" to revoke a visa petition. That authority was delegated by regulation to the Commissioner of the INS. See 8 C.F.R. § 2.1 (2003). The parties do not dispute that the INS was empowered to exercise the Attorney General's authority under Section 1155.

At issue is whether the INS's decision to revoke approval of Chai's visa petition, purportedly pursuant to Section 1155, is a "decision or action ... specified ... to be in the discretion of the Attorney General," such that Section 1252 precludes judicial review of that decision.

The first sentence of Section 1155 provides that the Attorney General "may, at any time, for what he deems to be good

---

4. Additionally, the INS denied Chai's I–485 petition on April 12, 2001.

and sufficient cause," revoke a visa petition. The third sentence, however, unequivocally limits that authority: *"In no case, however, shall such revocation have effect unless . . .* notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition *before such beneficiary commences his journey to the United States."* 8 U.S.C. § 1155 (emphases added). Thus, although the substance of the decision that there should be a revocation is committed to the discretion of the Attorney General, Section 1155 establishes mandatory notice requirements that must be met in order for the revocation to be effective, and courts retain jurisdiction to review whether those requirements have been met.

Under the plain language of Section 1155, a decision by the INS to revoke its approval of a visa petition shall not "have effect" unless (1) the alien receives notice of the revocation from the Secretary of State (2) before departing for the United States. In this case, it is undisputed that Chai did not receive notice of revocation—from the Secretary of State or any other party—before departing for the United States; he was already in the United States when the INS revoked its approval of his immigrant visa petition. Indeed, Chai was already in the United States on a nonimmigrant visa when his immigrant visa petition was initially approved. Therefore, under the terms of Section 1155, the revocation of his petition was not effective.

The INS argues that the notice requirement contained in the third sentence of Section 1155 does not apply to aliens, like Chai, who have already been admitted to the United States at the time of revocation. For this position the INS relies on the ruling of the Board of Immigration Appeals ("BIA") in *In re Vilos,* 12 I & N Dec. 61, 64 (BIA 1967), which, in interpreting the predecessor to Section 1155, rejected the argument that "there is no power in the Attorney General to revoke a petition, for good and sufficient cause, [if] the beneficiary is in the United States when revocation is sought." The BIA explained:

> If [the statute] were to be interpreted as counsel [for the alien] urges, it would make petitions filed on behalf of persons already in the United States virtually irrevocable, even when the relationship or status required for the preference no longer existed. We cannot believe[ ] that it was the intention of Congress to create a class of beneficiaries so privileged.

*Id.* The BIA's opinion did not undertake an analysis of the statutory language.

■ We review the BIA's interpretation of ambiguous provisions of the Immigration and Nationality Act with substantial deference, and will reject the BIA's interpretation only if it is "arbitrary, capricious, or manifestly contrary to the statute." *Evangelista v. Ashcroft,* 359 F.3d 145, 150 (2d Cir.2004) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). No court of appeals has addressed the issue before us, and the only district court to do so deferred to the BIA's interpretation in *In re Vilos,* upon finding that the text of Section 1155 was "ambiguous on its face." [5] *ANA Int'l, Inc. v. Way,* 242 F.Supp.2d 906, 916 (D.Or. 2002). If we were to conclude that Section

---

**5.** In *El–Khader v. Monica,* 366 F.3d 562, 563 (7th Cir.2004), the Seventh Circuit held that, pursuant to Section 1252, federal courts are divested of jurisdiction to review the revocation of a previously approved visa petition under Section 1155. However, the Seventh Circuit did not address the question—apparently not raised by the alien in that case—of whether Section 1155 permits revocation where the beneficiary is already inside the United States.

1155 is ambiguous, we would likewise be required to defer to the BIA's interpretation under *Chevron.* By contrast, "[i]f the intent of Congress is clear, that is the end of the matter." *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778.

■ We find no ambiguity in Section 1155's notice requirement. Although the first sentence of Section 1155 clearly states that the Attorney General may revoke approval "at any time," the third sentence just as clearly restricts that grant of authority by providing, *"[i]n no case, however,* shall such revocation have effect ... unless notice of the revocation is [1] communicated through the Secretary of State to the beneficiary of the petition [2] before such beneficiary commences his journey to the United States." 8 U.S.C. § 1155 (emphasis added). The plain statutory language does not exempt from this requirement beneficiaries who are already in the United States. Accordingly, the statute imposes the notice requirement as a prerequisite to the effective revocation of a visa petition.

In this case, the INS did not comply with the notice requirements of Section 1155, and therefore was not authorized to revoke Chai's visa petition. Because the INS had no statutory basis for its revocation decision, that decision was not "specified ... to be in the discretion of the Attorney General," and Section 1252 did not divest the District Court of jurisdiction to hear plaintiffs' challenge to revocation. The District Court therefore erred in holding that Section 1252 deprived it of jurisdiction to hear plaintiffs' claims.[6]

---

**6.** The INS claims that Congress, in drafting Section 1155, "could not have intended to make approved immigrant petitions for beneficiaries in the United States irrevocable." Def.'s Supp. Br. at 18. The INS argues that there is no principled basis for treating those beneficiaries already within the United States as a privileged class, whose petitions are irrevocable, while the INS is free to revoke visa petitions for beneficiaries living outside the United States (provided that they have not yet commenced their journeys to the United States).

We note, however, that the INS's approval of an immigrant visa petition does not, by itself, entitle an alien to permanent resident status. It appears that the Attorney General retains discretion to deny an application for adjustment of status *even where the applicant has an approved immigrant visa petition. See* 8 U.S.C. § 1255(a).

Indeed, Section 1155 expressly contemplates that the INS may seek to remove or exclude even those aliens whose visa petitions have been irrevocably approved. According to Section 1155, when notice of revocation has not been given before a beneficiary has begun his journey to the United States, that individual's "admissibility shall be determined in the manner provided for by sections 1225 and 1229a of this title." 8 U.S.C. § 1155. The cross-reference to Sections 1225 and 1229a is illuminating. Section 1225, entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," enumerates a variety of procedures for dealing with applicants for admission at the border. 8 U.S.C. § 1225. Section 1229a, however, dubbed "Removal proceedings," deals more generally with the removal of aliens, including those who have already been admitted to the United States. 8 U.S.C. § 1229a. These two provisions, therefore, furnish alternative mechanisms by which those whose visa petitions have been approved, but have already begun their travel to the United States, can either be excluded or removed.

There is no dispute that proceedings under Sections 1225 and 1229a remain available even where the INS's approval of a visa petition is irrevocable. The INS nonetheless argues that our interpretation of Section 1155 will "unsettle the adjustment of status process" and result in additional administrative burdens on the agency. Def.'s Supp. Br. at 28. If the INS is correct that our interpretation of Section 1155 will place significant burdens on the agency, the agency's recourse is to petition Congress to amend the statute. If there is merit in the INS's stated concerns for the future, it should not be difficult to obtain from Congress an appropriate technical amendment to the statute.

## CONCLUSION

For the reasons stated above, we VA-CATE the judgment of the District Court and REMAND for further proceedings consistent with this opinion.